**THIS VERSION OF THE OPINION INCLUDES THE APRIL 21, 2011, ERRATA**

**UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS**

No. 08-2705

JAMES E. BUIE, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided March 23, 2011)

*Kenneth M. Carpenter*, of Topeka, Kansas, was on the brief for the appellant.

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Brian B. Rippel*, Deputy Assistant General Counsel; and *Nhu P. Nguyen*, Appellate Attorney; all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, LANCE, and SCHOELEN, *Judges*.

PER CURIAM:  James E. Buie appeals through counsel a May 5, 2008, Board of Veterans' Appeals (Board) decision that (1) granted an effective date of April 16, 1998, for the award of a total disability rating based on individual unemployability; and (2) granted an effective date of April 16, 1998, for the award of a 60% disability rating for a low back disability.[1]  The Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a) to review the Board decision.

The novel legal issue raised by this case is whether a claimant may be awarded special monthly compensation under 38 U.S.C. § 1114(s) when the claimant has a total disability rating

---

[1] The Board also denied entitlement to a disability rating in excess of 70% for post-traumatic stress disorder from January 26, 2001, and to an initial disability rating in excess of 30% for that condition prior to January 26, 2001. In his brief, however, Mr. Buie makes no arguments with respect to his claim for benefits for post-traumatic stress disorder, and the Court therefore deems any appeal with respect to that claim abandoned. *See Grivois v. Brown*, 6 Vet.App. 136, 138 (1994) (holding that issues or claims not argued on appeal are considered abandoned).

based on individual unemployability that is based on more than one underlying disability. The Court holds that a total disability rating based on individual unemployability that is based on more than one underlying disability does not satisfy the first requirement of section 1114(s) that a claimant have "a service-connected disability rated as total." The Court also holds, however, that when such a situation arises, VA's duty to maximize a claimant's benefits requires VA to assess all of the claimant's service-connected disabilities without regard to the order in which service connection was awarded to determine whether any combination of the disabilities establishes eligibility for special monthly compensation under section 1114(s).

Because the Board failed to consider whether the combination of Mr. Buie's disabilities might entitle him to special monthly compensation, and because the Board failed to consider the application of 38 C.F.R. § 3.156(b) in regard to the effective date for Mr. Buie's low back disability, the Court will vacate the May 2008 Board decision and remand the matters for readjudication consistent with this decision.

## I. FACTS

Mr. Buie served on active duty in the U.S. Army from December 1965 to June 1967. He was awarded VA disability benefits for a low back condition and assigned a 10% disability rating in June 1971.

In November 1995, Mr. Buie sought an increased disability rating for his low back condition and advised VA that he had been "approved for 100% disability by [the Social Security Administration] for this disability," and that he had not worked since 1974 because his back condition was "totally disabling." Record (R.) at 2492. In February 1996, VA sent Mr. Buie a letter advising him that he might be entitled to a total disability rating if he was unable to "secure and follow a substantially gainful occupation" because of his service-connected disabilities. R. at 2490. The letter continued: "If you believe that you qualify, please complete and return the enclosed VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability." *Id.* Neither party disputes that Mr. Buie did not return the enclosed form.

In May 1996, a VA regional office considered medical reports from the Social Security Administration "through" February 1983, and outpatient treatment records from the Fayetteville,

2

North Carolina, VA medical center dated March to November 1995. The regional office determined that the medical evidence did not support a 20% disability rating and denied Mr. Buie's claim. The regional office did not expressly consider or discuss entitlement to a total disability rating based on individual unemployability, but noted that the Social Security Administration records "primarily show disability due to neuropsychiatric impairment, with lumbar injuries noted in service, and again at work [on September 7, 1971,] and [January 7, 1973,] by history only. Older records refer to Worker's Compensation settlement with ongoing benefits for the 1971 injury." R. at 2303.

In February 1997, Mr. Buie submitted a statement in support of claim:

I would like to reopen my claim to have my 10% [service-connected] back injury increased to a higher rating. I receive all my medical care at [the] VA [medical center in] Fayetteville. My back is worse because I have more pain and difficulty bending and standing for long periods of time.

R. at 2299. In July 1997, the regional office considered outpatient treatment records dated November 1995 to June 1996 from the Fayetteville VA medical center, as well as an April 1997 VA orthopedic examination report. The regional office found that the outpatient treatment records were "completely negative for complaints, symptoms, diagnosis[,] and treatment" of Mr. Buie's service-connected low back disability. R. at 2265. Based on the April 1997 VA examination, however, the regional office increased Mr. Buie's low back disability rating to 20%, effective February 17, 1997, though no explanation was given for the assignment of the effective date.[2]

In August 1997, Mr. Buie again submitted a statement in support of claim:

I am requesting an upgrade for my condition–back strain[–]and please note the enclosed medical paperwork. I now have a 20% [service-connected] rating for the back strain but the condition has worsened. Also, I have been on medication for several years for the condition. The medical paperwork is from [the Durham, North Carolina, VA medical center].

_____

[2] Mr. Buie's February 1997 statement is hand dated February 3, 1997, and appears to have been received by VA on February 10, 1997. *See* R. at 2299. The July 1997 regional office decision states that Mr. Buie's "claim for increase" was received on February 5, 1997. R. at 2267. The regional office also noted that the April 1997 examination was the first evidence that an increased disability rating was warranted. Because VA treated Mr. Buie's February 1997 statement as a new claim for an increased rating, it appears that the effective date assigned in July 1997 was not in accord with 38 U.S.C. § 5110(b)(2), which provides that "[t]he effective date of an award of increased compensation shall be the earliest date as of which it is ascertainable that an increase in disability had occurred, if application is received within one year from such date."

3

R. at 2260. In March 1998, the regional office considered VA outpatient treatment records from an unspecified VA medical center dated August 1994 and September 1995 (the later of which the regional office determined was a duplicate of a record already considered by VA) and a hospital report from the Durham VA medical center dated April to May 1997, as well as other evidence. The regional office noted that the August 1994 record showed that Mr. Buie had been seen for "recurrent low back pain." R. at 2239. Based on an April 1997 VA examination (presumably the same examination on which the regional office relied in its July 1997 decision), the regional office increased Mr. Buie's disability rating for his low back condition to 40%, effective February 5, 1997, the date the "[p]rior claim" was received. R. at 2239-40.

In April 1998, Mr. Buie wrote to VA requesting a 60% disability rating for his low back condition. He stated that the pain had increased, had moved closer to his spine, and was now so severe that he might have to be hospitalized. He advised that he had been treated by a private physician and had been prescribed medication for his condition. In May 1998, Mr. Buie again requested reevaluation of his back condition.[3] In October 1999, the regional office considered evidence dated as early as July 1998 and continued Mr. Buie's 40% disability rating, finding that his current condition did not warrant a higher disability rating. Mr. Buie filed a Notice of Disagreement with that decision in November 1999.

Also in November 1999, Mr. Buie submitted VA Form 21-8940, Veteran's Application for Increased Compensation Based on Unemployability, and asserted that his service-connected back and knee disabilities rendered him unemployable.

In January 2000, the regional office issued a Statement of the Case continuing the 40% disability rating assigned for Mr. Buie's low back disorder. In November 2000, the regional office denied entitlement to a total disability rating based on individual unemployability, finding that the medical evidence did not demonstrate that Mr. Buie was unable to secure or follow substantially gainful employment. Mr. Buie, through his current counsel, filed a Notice of Disagreement with that decision in December 2000.

---

[3] At this time, Mr. Buie also sought to reopen previously denied claims for bilateral knee disabilities. Those claims were granted and Mr. Buie was ultimately assigned a 10% disability rating for each knee.

In July 2001, the regional office considered evidence dated as early as June 1998 and issued a rating decision granting Mr. Buie an increased disability rating of 60% for his low back disability, effective May 29, 1998, the date of Mr. Buie's correspondence requesting "reevaluation" of his condition. The regional office also granted entitlement to a total disability rating based on individual unemployability, finding that Mr. Buie was unable to secure or follow substantially gainful employment as a result of his service-connected knee and back disabilities. The regional office assigned an effective date of May 29, 1998, finding that was the date that Mr. Buie's service-connected disabilities first met the schedular requirements for such a rating.

In November 2001, Mr. Buie filed a Notice of Disagreement with the effective date assigned for entitlement to a total disability rating based on individual unemployability. The effective date was confirmed by a March 2002 Statement of the Case. In April 2002, Mr. Buie again disagreed with the effective date assigned for the award of a total disability rating based on individual unemployability and also filed a Notice of Disagreement with the effective date assigned for the increased disability rating for his low back condition.

In the meantime, in May 2004, the Board granted Mr. Buie entitlement to benefits for post-traumatic stress disorder. Ultimately, Mr. Buie was granted a 30% disability rating for that condition, effective August 28, 1997, and a 70% disability rating from January 26, 2001.

In May 2008, after several years of additional development, including two Board remands and a remand from this Court, the Board issued the decision on appeal, granting an effective date of April 16, 1998, but no earlier, for the award of a total disability rating based on individual unemployability and for the award of a 60% disability rating for a low back disability. The Board first determined that, although Mr. Buie's April 1998 letter did not constitute a Notice of Disagreement with the March 1998 regional office decision, it did raise a valid claim of entitlement to a 60% disability rating. Accordingly, the Board determined that the effective date of the assignment of the 60% disability rating was April 16, 1998, rather than May 29, 1998. Likewise, the Board determined that April 16, 1998, was the proper effective date for the award of a total disability rating based on individual unemployability, as Mr. Buie met the schedular requirements for such a rating at the time he was granted an increased disability rating for his low back condition.

5

Next, the Board engaged in a long discussion of whether Mr. Buie's various statements in support of claim and correspondence to VA throughout the adjudication of his claim for benefits for a back condition, including for entitlement to total disability rating based on individual unemployability, met the requirements of a Notice of Disagreement. The Board concluded that Mr. Buie's February 1997, August 1997, April 1998, and May 1998 statements were not Notices of Disagreement, and therefore the regional office had not erred in treating all of those statements as new claims for entitlement to an increased disability rating for a low back condition.

With respect to Mr. Buie's argument that his November 1995 claim for an increased disability rating for a low back condition should also have been construed as a request for consideration of entitlement to a total disability rating based on individual unemployability, the Board agreed that the 1995 statement included an "informal claim" for entitlement to a total disability rating based on individual unemployability. However, the Board determined that such an informal claim only triggered VA's duty to send Mr. Buie an official application for that benefit, and that the regional office properly interpreted Mr. Buie's failure to return the application form "as an indication that he did not believe he qualified for a [total disability rating based on individual unemployability]." R. at 24. Accordingly, the Board determined that the November 1995 statement could not provide a basis for an earlier effective date for entitlement to a total disability rating based on individual unemployability.

On appeal, Mr. Buie makes two arguments. First, with respect to his claim for benefits for a low back condition, he contends that the Board failed to consider 38 C.F.R. § 3.156(b), which provides, in pertinent part: "New and material evidence received prior to the expiration of the appeal period . . . will be considered as having been filed in connection with the claim which was pending at the beginning of the appeal period." In that regard, Mr. Buie argues that his February 1997 statement to VA, received within one year of the May 1996 regional office decision, abated the finality of that decision, such that, when VA issued its July 1997 decision, it should have considered an effective date as early as November 1995, the date of his initial claim for an increased disability rating. Likewise, he contends that his August 1997 and April 1998 statements also acted to abate the finality of the July 1997 and March 1998 regional office decisions, respectively. As such, Mr. Buie argues that the Board's finding that he filed numerous new claims for an increased disability

6

rating and, by extension, its determination of the proper effective date for a 60% disability rating, is clearly erroneous. Second, Mr. Buie argues that the Board erred in not awarding him special monthly compensation pursuant to 38 U.S.C. § 1114(s), despite the fact that he met the statutory requirements for such an award.

In response, the Secretary argues that the Board's determination that the May 1996, July 1997, and March 1998 regional office decisions were final because Mr. Buie did not file Notices of Disagreement with those decisions is not clearly erroneous. He also contends that the Board considered and rejected the possibility of an earlier effective date for the award of total disability rating based on individual unemployability, and therefore "any argument that [Mr. Buie] argues is mooted and harmless." Secretary's Brief (Br.) at 10-11. Finally, the Secretary asserts that Mr. Buie is not entitled to special monthly compensation because the statute and regulation both require that the first prong of the section 1114(s) test be met by a single disability, not a combination of disabilities.

## II. ANALYSIS

### A. Special Monthly Compensation

Mr. Buie argues that the Board erred by failing to consider and apply all applicable provisions of law and regulation as required by 38 U.S.C. § 7104(a). Specifically, he contends that his disability ratings rendered him eligible, as a matter of law, to receive special monthly compensation pursuant to 38 U.S.C. § 1114(s) without having to file a separate claim. Appellant's Br. at 15-16 (citing *Bradley v. Peake*, 22 Vet.App. 280, 294 (2008)); *see also Akles v. Derwinski*, 1 Vet.App. 118, 121 (1991) (noting VA's policy to consider special monthly compensation where applicable). The statute provides, in pertinent part: "If the veteran has a service-connected disability rated as total, and . . . has additional service-connected disability or disabilities independently ratable at 60 percent or more," then VA will award him special monthly compensation. 38 U.S.C. § 1114(s). The pertinent part of the implementing regulation provides: "The special monthly compensation provided by 38 U.S.C. § 1114(s) is payable where the veteran has a single service-connected disability rated as 100 percent and . . . [h]as additional service-connected disability or disabilities independently ratable at 60 percent." 38 C.F.R. § 3.350(i)(1) (2010).

Mr. Buie contends that, because he was already granted entitlement to a total disability rating based on individual unemployability effective May 29, 1998 (prior to the Board's grant of an earlier effective date for that rating), he was entitled to receive special monthly compensation effective January 26, 2001, the effective date VA assigned for the award of a 70% disability rating for post-traumatic stress disorder. In other words, Mr. Buie reads the words "a service-connected disability rated as total" in section 1114(s) to include a total disability rating based on individual unemployability, even where this rating is based on multiple disabilities. This is a question of law that the Court reviews de novo. *See* 38 U.S.C. § 7261; *Lane v. Principi*, 339 F.3d 1331, 1339 (Fed. Cir. 2003) ("[I]nterpretation of a statute or regulation is a question of law.").

In *Bradley*, the Court considered a similar factual situation. There, when confronted with an appellant seeking special monthly compensation based in part on receipt of a total disability rating based on individual unemployability, the Secretary raised the issue of "duplicate counting of disabilities," whereby "allowing [a total disability rating based on individual unemployability] to satisfy the total disability requirement of section 1114(s), and one or more of the disabilities upon which the [total disability rating based on individual unemployability] was awarded to satisfy the second requirement of an additional disability or disabilities of 60% or more, would result in the same disability being counted twice." 22 Vet.App. at 293. The Court, however, noted that this would not happen in all cases and hypothesized a situation in which a claimant is in receipt of a total disability rating based on individual unemployability for a single disability and was thereafter awarded disability ratings for other conditions. The Court declined to exclude such a claimant from entitlement to special monthly compensation and held that section 1114(s) "does not limit 'a service-connected disability rated as total' to only a schedular rating of 100%, and the Secretary's current regulation permits a [total disability rating based on individual unemployability] based on *a single disability* to satisfy the statutory requirement of a total rating." *Id.* (emphasis added).

The Secretary hangs his hat on the wording in *Bradley* emphasized above and argues that because Mr. Buie's total disability rating for individual unemployability is based on more than one underlying disability, he cannot be entitled to special monthly compensation. Mr. Buie argues that "[t]he fact that the VA's 2001 award of a total rating based on unemployability was made based on a combination of disabilities is irrelevant." Appellant's Reply Br. at 11. Neither party is correct.

8

First, the Court notes that a total disability rating for individual unemployability is a *rating*, not a *disability*. *See Rice v. Shinseki*, 22 Vet.App. 447, 452 (2009) ("[A] finding that an individual is entitled to [a total disability rating based on individual unemployability] . . . merely means that the veteran has met certain qualifications entitling him to a 'total disability' rating."); *Norris v. West*, 12 Vet.App. 413, 420-21 (1999). Therefore, as the Court held in *Bradley*, a total disability rating based on individual unemployability may satisfy the statutory requirement that a disability be "rated as total." 22 Vet.App. at 293. However, the *award* of a total disability rating based on individual unemployability cannot meet the statutory requirement for "a service-connected disability" because it is not a *disability*, but rather a *rating*. Therefore, Mr. Buie is incorrect that VA's 2001 award of a total disability rating based on individual unemployability is sufficient, in itself, to meet the first requirement of the statutory test for special monthly compensation under section 1114(s).

The above analysis alone does not resolve the question the Court is presented with in this appeal. In *Bradley*, the Court did not address the question of whether the section 1114(s) requirement of a "service-connected disability rated as total" could be satisfied by a total disability rating based on individual unemployability that is based on more than one underlying disability. That is the question we resolve today.

"'Statutory interpretation begins with the language of the statute, the plain meaning of which we derive from its text and its structure.'" *Myore v. Nicholson*, 489 F.3d 1207, 1211 (Fed. Cir. 2007) (quoting *McEntree v. Merit Sys. Prot. Bd*, 404 F.3d 1320, 1328 (Fed. Cir. 2005)); *see Sharp v. Shinseki*, 23 Vet.App. 267, 271 (2009); *Gardner v. Derwinski*, 1 Vet.App. 584, 586 (1991) ("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." (citing *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. 399, 403-05 (1988))), *aff'd*, 5 F.3d 1456 (Fed. Cir.1993), *aff'd*, 513 U.S. 115 (1994); *see also McGee v. Peake*, 511 F.3d 1352, 1356 (Fed. Cir. 2008). If "'the plain meaning of a statute is discernable, that "plain meaning must be given effect,"'" *Johnson v. Brown*, 9 Vet.App. 369, 371 (1996) (quoting *Tallman v. Brown*, 7 Vet.App. 453, 460 (1995)), unless a "'literal application of [the] statute will produce a result demonstrably at odds with the intention of its drafters,'" *Gardner*, 1 Vet.App. at 586-87 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)); *Tropf v. Nicholson*, 20 Vet.App. 317, 321, n.1 (2006) ("[A] functioning system of laws must give primacy to the plain

language of authorities . . . . Without standard word meanings and rules of construction, neither Congress nor the Secretary can know how to write authorities in a way that conveys their intent and no practitioner or–more importantly–veteran can rely on a statute or regulation to mean what it appears to say."); *see also Roper v. Nicholson*, 20 Vet.App. 173, 180 (2006). The Court interprets statutes de novo. *See* 38 U.S.C. § 7261; *Lane*, 339 F.3d at 1339; *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc).

In *Bradley*, the Court examined the plain language of section 1114(s) and held: "[I]t is clear from the use of the language and the structure of the sentence [in section 1114(s)] that Congress did not intend that a 100% combined [schedular] rating suffices for 'a service-connected disability rated as total.'" 22 Vet.App. at 290. The Court explained that "Congress used the article 'a' and singular 'disability' when establishing 'a service-connected disability rated as total' as one of the requirements for [special monthly compensation] under section 1114(s)." *Id.* The Court noted that, "In contrast, Congress permits the second requirement to be met with either a single 'disability or disabilities independently' rated at 60%." *Id.* The Court concluded that this distinction demonstrated "congressional authorization for combined ratings to satisfy the second requirement but not the first." *Id.*

Similarly, when drafting the implementing regulation, § 3.350(i), VA used the article "a," along with the adjective "single" and the singular noun "disability," when establishing the requirement of "a single service-connected disability rated as 100 percent" as the first requirement for special monthly compensation. 38 C.F.R. § 3.350(i). Like the statute, VA's regulation also clearly permits the second requirement to be met by additional "disability or disabilities" that are independently rated at 60%. *Id.*; *see Bradley*, 22 Vet.App. at 292 (stating that VA's regulation "authorizing the use of [a total disability rating based on individual unemployability] to satisfy the 'total' rating requirement of section 1114(s) is a plausible and reasonable interpretation of the statute and this regulation is entitled to substantial deference").

Accordingly, based on the plain and unambiguous language of the statute, Congress's demonstrated intent not to permit combined ratings to satisfy the first requirement of the statute, and the Secretary's reasonable interpretation of the statute, the Court cannot discern any rational basis to permit a "total" rating–whether it be schedular, extraschedular, or based on individual

10

unemployability–to satisfy the statute when the total rating is based on more than a single service-connected disability. Hence, although a total disability rating for individual unemployability may satisfy the "rated as total" element of section 1114(s), the Court today holds that a total disability rating based on individual unemployability that is based on multiple underlying disabilities cannot satisfy the section 1114(s) requirement of "a service-connected disability" because that requirement must be met by a single disability.

That is not the end of the matter, however. The Secretary is also incorrect in asserting that this analysis means that Mr. Buie is necessarily ineligible for special monthly compensation under section 1114(s). There is no language in either the statute or the regulation that relates to timing or suggests that the relevant disabilities must be awarded in a particular order. *See* 38 U.C.S. § 1114(s); 38 C.F.R. § 3.350(i). The Court envisions a scenario in which a veteran receives a total disability rating based on individual unemployability that is based on multiple underlying disabilities and then later receives a schedular disability rating for a single, separate disability that would, by itself, create the basis for an award of a total disability rating based on individual unemployability. In this scenario, if the order in which the veteran received the awards for his disabilities was determinative, he would not be eligible to receive special monthly compensation. However, if the veteran had been awarded service connection for these disabilities in the reverse order, he would be eligible to receive special monthly compensation. There is no evidence to suggest that Congress intended such an absurd result, and nothing in the plain language of the statute or the regulation requires it. *See Timex V.I. v. United States*, 157 F.3d 879, 886 (Fed. Cir. 1998) (holding that a statutory or regulatory construction "that causes absurd results is to be avoided if at all possible" (citing *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940))); *see also United States v. X-Citement Video*, Inc., 513 U.S. 64, 68-69 (1994); *Green v. Bock Laundry Mach. Co.*, 490 U.S. 504, 527-29 (1989) (Scalia, J., concurring). In addition, such a result would be in conflict with VA's well-established duty to maximize a claimant's benefits. *See AB v. Brown*, 6 Vet.App. 35, 38 (1993); 38 C.F.R. § 3.103(a) (2010); *see also Bradley*, 22 Vet.App. at 294 (remanding, pursuant to VA's duty to maximize benefits, for VA to determine whether the appellant's post-traumatic stress disorder, rated 70% disabling, would entitle him to a total disability rating based on individual unemployability and, therefore, special monthly compensation); *cf. Sharp v. Shinseki*, 23 Vet.App. 267, 276 (2009)

(holding that the order in which a veteran was awarded benefits was not relevant to determining eligibility to additional dependency compensation).

Therefore, the Court holds that the order in which disabilities are service connected is not relevant to VA's determination of a claimant's eligibility for special monthly compensation under section 1114(s). Whenever a veteran has a total disability rating, schedular or extraschedular, based on multiple disabilities and the veteran is subsequently awarded service connection for any additional disability or disabilities, VA's duty to maximize benefits requires VA to assess all of the claimant's disabilities without regard to the order in which they were service connected to determine whether *any combination of the disabilities* establishes entitlement to special monthly compensation under section 1114(s). If, after such an assessment, VA determines that the claimant is entitled to special monthly compensation, the effective date of the award of special monthly compensation will be the effective date assigned for the award of benefits for the final disability that forms the relevant combination of disabilities.

In this case, there is evidence in the record to suggest that Mr. Buie may be eligible for a total disability rating for individual unemployability based on his service-connected post-traumatic stress disorder alone. The Board noted that:

> there is at least some evidence indicating that the veteran is totally disabled, even though the reported symptomatology [for his post-traumatic stress disorder] has never been consistent with the criteria for a 100 percent [schedular] rating. In particular, the veteran's private physician . . . concluded in a May 2001 report that the veteran has not been able to sustain work or social relationships since he was discharged, and that he considered the veteran permanently and totally disabled because of this. A Global Assessment of Functioning (GAF) score of 25 was then assigned.

R. at 15.[4] Despite this evidence, the Board did not consider whether Mr. Buie might be eligible for a total disability rating based on individual unemployability based solely on his service-connected post-traumatic stress disorder. If his post-traumatic stress disorder alone, for which he has been assigned a disability rating of 70%, would qualify him for a total disability rating based on individual unemployability, then that condition would satisfy the requirement of a "service-connected disability

---

[4] A Global Assessment of Functioning score represents "the clinician's judgment of the individual's overall level of functioning" and is "useful in planning treatment and measuring its impact[ ] and in predicting outcome." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 30 (4th ed. 1994); *see Richard v. Brown*, 9 Vet.App. 266, 267 (1996).

rated as total" and his service-connected leg and knee injuries would meet the requirement of "additional service-connected disability or disabilities independently ratable at 60 percent or more."

Accordingly, on remand, the Board will determine whether Mr. Buie's service-connected post-traumatic stress disorder alone would be sufficient to entitle him to a total disability rating based on individual unemployability. If so, in light of his other "disability or disabilities independently ratable at 60%," 38 U.S.C. § 1114(s), he is entitled to receive special monthly compensation, and the Board should determine the proper effective date for such an award. On remand, Mr. Buie is free to submit additional evidence and argument in accordance with *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002).

### B. 38 U.S.C. § 3.156(b)

Turning to Mr. Buie's claim for benefits for a low back disability, the Board's and the Secretary's discussions of whether Mr. Buie's February and August 1997 and April and May 1998 statements are Notices of Disagreement are not relevant and distract from the real issue in this matter. There is no dispute that those documents are not Notices of Disagreement with the prior regional office decisions in May 1996, July 1997, and March 1998.

That, however, does not end the inquiry, because those statements were submitted within one year of the regional office decisions they followed, and so, if those statements included the submission of new and material evidence, 38 C.F.R. 3.156(b) requires that any subsequent decision based on such evidence relate back to the original claim. As the United States Court of Appeals for the Federal Circuit (Federal Circuit) explained, "[t]he current statutory and regulatory scheme . . . provides that claimants have one year in which to appeal [a regional office] decision denying service connection, and that new evidence received prior to the expiration of that one-year time period . . . is to be considered as having been filed in connection with the original claim." *Jennings v. Mansfield*, 509 F.3d 1362, 1368 (Fed. Cir. 2007) (citing 38 U.S.C. § 7105(b)(1), (c); 38 C.F.R. § 3.156(b) (2007)). The Federal Circuit went on to hold that a regional office decision becomes final "only after the period for appeal has run," and that "[a]ny interim submissions before finality must be considered by the VA as part of the original claim." *Id.* Accordingly, the Secretary's assertion that the May 1996, July 1997, and March 1998 regional office decisions are necessarily final because Mr. Buie failed to file Notices of Disagreement is incorrect.

The Board did not discuss the application of § 3.156(b) in its decision, instead focusing on the question of whether Mr. Buie's statements satisfied 38 C.F.R. § 20.201 and were therefore Notices of Disagreement. This was undoubtedly error. Each of Mr. Buie's statements was submitted within one year of the corresponding regional office decision, and the Board therefore should have considered whether the statements included the submission of new and material evidence. 38 U.S.C. § 7104(a) ("Decisions of the Board shall be based on the entire record in the proceeding and upon consideration of all evidence and material of record and applicable provisions of law and regulation.").

Although the Secretary contends that Mr. Buie's various statements do not contain material evidence, the determination of whether evidence is material is a factual finding, and the Court is empowered only to review the Board's findings in that regard. *See Suaviso v. Nicholson*, 19 Vet.App. 532, 533 (2006) (holding that the determination of new and material evidence is a factual finding the Court reviews under the "clearly erroneous" standard). Because, however, the Board has made no such findings, Mr. Buie's appeal of the effective date assigned for an increased disability rating for a low back disability, including entitlement to a total disability rating based on individual unemployability, must be remanded for the Board to consider this question in the first instance. *See Elkins v. Gober*, 229 F.3d 1369, 1377 (Fed. Cir. 2000) ("Fact-finding in veterans cases is to be done by the expert [Board], not by the Veterans Court."); *Rice*, 22 Vet.App. at 453 (holding that entitlement to a total disability rating based on individual unemployability is not a separate claim, but is part of a claim for an increased disability rating where there is evidence of unemployability).

On remand, the Board should consider the application of § 3.156(b), including reconsidering whether the regional office correctly characterized Mr. Buie's February 1997, August 1997, April 1998, and May 1998 statements as new claims for an increased disability rating. Mr. Buie is free to submit additional evidence and argument with respect to this claim. *See Kay*, 16 Vet.App. at 534; *Kutscherousky*, 12 Vet.App. at 372-73.

14

## III. CONCLUSION

Upon consideration of the foregoing, the May 5, 2008, Board decision is VACATED and the matters are REMANDED for reajudication consistent with this decision.